**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Z.J., *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br><br>    Defendant. | Case No. 1: 23-cv-1279 (JMC) |

**MEMORANDUM OPINION**

Plaintiffs K.J. and J.J. bring this suit against the District of Columbia on behalf of themselves and their son Z.J., seeking to enforce their son's right to a free and appropriate public education (FAPE) in the D.C. Public Schools (DCPS).[1] Plaintiffs participated in an administrative process with the District government before an independent hearing officer, arguing that DCPS violated the Individuals with Disabilities Education Act (IDEA) in failing to provide certain resources for their son. The hearing officer ruled for DCPS on all claims, and Plaintiffs now challenge that hearing officer's determinations in federal court.[2]

Before this Court are Plaintiffs' Motion for Summary Judgment and the District's Cross Motion for Summary Judgment. ECF 11; ECF 13. Magistrate Judge Moxila A. Upadhyaya recommended the Court deny Plaintiffs' motion and grant the District's motion to affirm the hearing officer's determinations. ECF 18. Plaintiffs objected and the District filed a response.

---

[1] This Court granted Plaintiffs' Motion to Proceed under Pseudonym on May 9, 2023. ECF 3.

[2] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

1

ECF 19; ECF 20. Upon consideration of the entire record, Magistrate Judge Upadhyaya's Report and Recommendation, Plaintiffs' objections, and the District's response, the Court will accept Magistrate Judge Upadhyaya's recommendation, **GRANT** the District's Cross Motion, and **DENY** Plaintiffs' Motion for Summary Judgment.

**I.     BACKGROUND**

The facts of this case are set forth in detail in the Report and Recommendation. *See* ECF 18 at 2–8. Because neither party makes specific objections to Magistrate Judge Upadhyaya's summary of the factual background of the case, the Court adopts it in full. *See Thomas v. Arn*, 474 U.S. 140, 150–51 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). Nevertheless, the Court briefly recounts the legal and factual background relevant to assessing Plaintiffs' objections to the Report.

**A. Statutory Framework**

Pursuant to federal law under the Individuals with Disabilities Education Act, the District of Columbia must make available for children with disabilities a free and appropriate education that is "designed to meet [each child's] unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). In doing so, the District is required to develop an "individualized education program" (IEP) for each child. 20 U.S.C. § 1414(d)(2)(A). The District is obligated to ensure that the child's parents, teachers, local education agency (in this case, DCPS), and, when appropriate, the child, are all given the opportunity to participate in the IEP development process. *Id.* § 1414(d)(1)(B); *see also Honig v. Doe*, 484 U.S. 305, 311 (1988) (noting that IEPs are "[p]repared at meetings between a representative of the local school district, the child's teacher, and the parents").

The IDEA permits states to enact their own procedural protections on top of the IDEA as the baseline.[3] *Middleton v. District of Columbia*, 312 F. Supp. 3d 113, 122 (D.D.C. 2018). In implementing the IDEA, the District has provided additional "procedural safeguards that exceed the federal standard" and "an individual may bring an action under the federal statute seeking to enforce the state standard." *Id.*; 20 U.S.C. § 1401(9) (defining a FAPE to include "special education and related services that . . . meet the standards of the State educational agency"). Under the Special Education Student Rights Act of 2014 (Student Rights Act), the District of Columbia has implemented a procedural right to observe, whereby, "[u]pon request," DCPS must "provide timely access" to a child's parents or their designee to "observ[e] [the] child's current or proposed special education program." D.C. Code § 38–2571.03(5)(A). Importantly, this right excludes any designees who are "representing the parent's child in litigation related to the provision of a [FAPE] for that child" or "who ha[ve] a financial interest in the outcome of such litigation." *Id.*; *see also Smith v. District of Columbia,* No. 22-cv-2755, 2023 WL 6291637, at *5 n.2 (D.D.C. July 31, 2023), *report and recommendation adopted*, No. 22-cv-2755, 2023 WL 8519987 (D.D.C. Dec. 8, 2023) (noting that "no expert retained by" the parent "could have observed [the child] in the classroom after" the filing of an administrative due process complaint). D.C. Code § 38-2571.03(5)(E) also provides that "[a]n observer shall not disclose nor use any information obtained during the course of an observation obtained for the purpose of seeking or engaging clients in litigation against the District."

Lastly, any violations of these procedural protections "are only actionable if they compromise the student's educational opportunities or seriously infringe parents' participation in their child's education." *Cooper v. District of Columbia*, 77 F. Supp. 3d 32, 37 (D.D.C. 2014). In

---

[3] For the purposes of the IDEA, the District of Columbia is a state. 20 U.S.C. § 1401(31).

3

other words, the parents or child must show that the procedural violation "result[ed] in loss of educational opportunity for the student." *Leggett v. District of Columbia*, 793 F.3d 59, 67 (D.C. Cir. 2015); *Razzaghi v. District of Columbia*, No. 03-cv-1619, 2005 WL 3276318, at *8 (D.D.C. Sept. 28, 2005) ("While it is true that courts must enforce procedural compliance with IDEA, a violation will be disregarded as harmless unless it resulted in substantive harm."). "Procedural inadequacies" in IEP development can form the basis of a suit only if those inadequacies "seriously infringe upon the parents' opportunity to participate" in an IEP process that "clearly result[s] in the denial of a FAPE." *Cooper*, 77 F. Supp. 3d at 37.

### B. Factual Background

At the time Plaintiffs brought their suit against DCPS, Z.J. was a thirteen-year-old child diagnosed with Attention Deficit Hyperactivity Disorder, a mixed receptive/expressive language disorder, a phonological disorder, and specific learning disorders in mathematics, reading, and written expression. ECF 4 ¶ 6. DCPS found Z.J. eligible for special education services. *Id*. Z.J. attended his local DCPS elementary school through the end of the 2019–20 school year. *Id*. ¶ 17. For the 2020–21 school year, Plaintiffs chose to enroll him in the Lab School, a non-public special education school. *Id*.; ECF 18 at 2.

On January 4, 2021, Plaintiffs filed a due process complaint alleging that DCPS failed to provide Z.J. with a FAPE for the 2019–20 and 2020–21 school years. ECF 4 ¶ 23. In March 2021, the parties entered into a settlement agreement in which DCPS agreed to "reimburse the parents for the expenses incurred at Lab" for the 2020–21 school year. *Id*. As a part of the settlement agreement, on June 11, 2021, DCPS convened a team meeting to begin discussions for developing an IEP for Z.J. for the 2021–22 school year. *Id*. ¶ 26; ECF 18 at 2. The process included DCPS, Plaintiffs, Plaintiffs' educational consultant Dr. Laura Solomon, and Lab school

staff. ECF 18 at 2. The 2021 IEP provided "20 hours per week of specialized instruction to be conducted outside of the general education environment," as well as other services including occupational therapy, behavioral support services, and speech-language pathology. *Id.* at 2–3. Z.J.'s mother stated that she "fully participated in the IEP meeting and expressed her opinions" and Plaintiffs "agreed with all aspects of the IEP except the number of hours of specialized instruction" that he would be provided "outside the general education setting." ECF 10-1 at 17 ¶ 32–33. Plaintiffs and their expert argued that "Z.J. require[d] full-time special education support, entirely removed from the general education setting." ECF 4 ¶ 28.

On June 30, 2021, DCPS informed Plaintiffs that Z.J. would be placed at the Alice Deal Middle School (Deal) for the upcoming school year, where Deal would provide Z.J. with a FAPE based on the developed plan. ECF 10-1 at 364. On July 21, 2021, Dr. Solomon emailed Deal and DCPS asking to "set up a time to meet by video and learn how Deal plans to implement [Z.J.]'s IEP." *Id.* at 369. DCPS and Deal provided information on scheduling a school visit and shared "website links that explained [Deal] and its special education programs." *Id.* at 17–18 ¶ 36. Neither Dr. Solomon nor the parents responded to DCPS' offer. *See id.* at 934; ECF 18 at 3. On August 2, 2021, Plaintiffs informed DCPS of their decision to enroll Z.J. at Lab for the 2021–22 school year. ECF 10-1 at 371.

On October 12, 2021, Dr. Solomon made a request to Deal for the schedule that Z.J. "would follow at Deal" and "to come observe the program." *Id*. at 415. DCPS declined Dr. Solomon's request, stating that the school "does not make schedules for students who are not attending." *Id.* at 18 ¶ 38. Neither Dr. Solomon nor Plaintiffs followed up on this request. *See id.* On or around December 9, 2021, Plaintiffs were "provided with an informative tour and observation of Deal" by DCPS. *Id.* at 601.

5

Following further back and forth between Plaintiffs and DCPS over the course of 2022, including the attempted development of an IEP for the 2022–23 school year, Plaintiffs filed a due process complaint with the District in August 2022, alleging that DCPS failed to provide a FAPE to Z.J. for the 2021–22 and 2022–23 school years.[4] ECF 4 ¶ 41; ECF 10-1 at 545–53. Plaintiffs alleged in their due process complaint that DCPS denied Z.J. a FAPE by (1) failing to propose an appropriate IEP due to insufficient hours and type of specialized instruction, (2) failing to propose a proper educational placement, and (3) failing to permit an observation by Dr. Solomon at Deal. ECF 10-1 at 553. On November 8, 2022, Dr. Solomon reached out to Deal again requesting an observation of Z.J.'s proposed program at Deal. *Id*. at 717. On November 18, 2022, DCPS responded that they were "considering this request and . . . will follow up in advance of" the scheduled administrative hearing on Plaintiffs' complaint. *Id*. at 714. Four days later, on November 22, 2022, Plaintiffs submitted a Motion to Permit Observation of Parent Designee as a part of their complaint proceeding, seeking an order from the hearing officer to permit Dr. Solomon to observe the proposed program at Deal. *Id.* at 690–94. DCPS filed an opposition to the motion on November 29, 2022. *Id.* at 721–24.

On January 3, 2023, the hearing officer denied Plaintiffs' Motion to Permit Observation. *Id.* at 741–43. The officer determined that Plaintiffs sought to use observation of the school as an impermissible mechanism to allow their "anticipated witness" to "pre-mature[ly]" conduct "discovery" against DCPS ahead of the "upcoming due process hearing. *Id.* at 742. On March 16, 2023, the officer issued a final administrative decision rejecting all of Plaintiffs' claims. *Id*. at 4–35. Accordingly, the officer concluded that Z.J. was not denied a FAPE by DCPS and that DCPS would not be liable for any cost of attendance incurred by Plaintiffs from Z.J.'s attendance

---

[4] Plaintiffs also filed a due process complaint in January 2022, which they withdrew in April 2022. ECF 4 ¶¶ 34–35.

6

at Lab. *Id.* As relevant here, the officer also found that DCPS did not "serious[ly] infringe" on Plaintiffs' participation in the IEP process by allegedly failing to permit Dr. Solomon's observations of Deal because Plaintiffs had a "full and unbridled opportunity" to engage in the IEP development process. *Id.* at 29–34. Under 20 U.S.C. § 1415(i)(2), Plaintiffs had ninety days to appeal the decision of the hearing officer in state or federal court.

### C. Procedural History

Plaintiffs timely filed a Complaint in this Court seeking judicial review of the hearing officer's decision. ECF 1. They then filed a motion for summary judgment and the District filed its cross-motion. ECF 11; ECF 13. The case was then referred to Magistrate Judge Upadhyaya to issue a Report and Recommendation. June 9, 2023 Min. Order. Magistrate Judge Upadhyaya subsequently issued her Report and Recommendation, recommending that Plaintiffs' Motion for Summary Judgment be denied and the District's Motion for Cross Summary Judgment be granted. ECF 18. Plaintiffs filed their objection to the Report and Recommendation pursuant to Local Civil Rule 72.3(b). ECF 19. Plaintiffs' objection focused solely on whether the District denied Z.J. a FAPE by "refus[ing] to allow the parents" and Dr. Solomon to conduct observations at Deal. *Id*. at 2. The District filed a Response to the objection. ECF 20.

## II.   LEGAL STANDARD

After a magistrate judge enters their recommended disposition, a party may file written objections to the magistrate judge's proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2); *see also* LCvR 72.3(b) (requiring the objecting party to "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection"). This Court must apply a de novo standard of review to "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The

Court may "accept, reject, or modify" the magistrate judge's findings and dispositions. *Id.*; *see also* LCvR 72.3(c).

In seeking review of a hearing officer's determination under the IDEA, "the burden of proof is always on the party challenging the administrative determination, who must . . . take on the burden of persuading the court that the hearing officer was wrong by a preponderance of the evidence." *District of Columbia v. Ramirez*, 377 F. Supp. 2d 63, 67 (D.D.C. 2005). While the Court "must make an independent review of the evidence," it must also give "due weight to the decision of the hearing officer and . . . afford some deference to the expertise of the hearing officer and the school officials." *Middleton*, 312 F. Supp. 3d at 129; *see also Bd. of Educ. Of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 206 (1982) ("[T]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.").

## III.   ANALYSIS

Plaintiffs contend that Magistrate Judge Upadhyaya's "most significant error" in the Report was her rejection of their procedural claim that DCPS impeded Plaintiffs and their expert from observing the proposed special education program for Z.J. at Deal.[5] ECF 19 at 2. Plaintiffs argue that they requested and were denied an opportunity to observe on three separate occasions in July 2021, October 2021, and November 2022. *Id.* at 3.

Like Magistrate Judge Upadhyaya and the hearing officer, the Court rejects Plaintiffs' claim. Under 34 C.F.R. § 300.513(a)(2), a hearing officer can "find that a child did not receive a

---

[5] Plaintiffs say that they generally "object to much of [Magistrate Judge Upadhyaya's] analysis" regarding the IEPs proposed for Z.J., but do not specify any other objections. ECF 19 at 2. The Court is only required to address the objection Plaintiffs specifically raised based on the procedural right to observe. *See* LCvR 72.3(b).

FAPE" if "procedural inadequacies . . . [s]ignificantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child."[6] Plaintiffs have failed to show that any denial of their right to observe actually impeded their opportunity to participate in the formulation of a plan for Z.J.'s special education needs. First, in July 2021, Plaintiffs did not request an opportunity to observe and did not follow up with the school when they had the opportunity to do so. By October 2021 and November 2022, Plaintiffs had already declined the proposed IEPs for the 2021–22 and 2022–23 school years respectively and decided to enroll Z.J. at the Lab School. Accordingly, any denial of their right to observe could not have hindered their participation in those IEP processes. Finally, by the time Plaintiffs requested observation in November 2022, they had already filed a due process complaint and therefore were not entitled to send their expert to observe Deal because they were improperly gathering evidence for litigation. Accordingly, the Court will adopt Magistrate Judge Upadhyaya's Report and Recommendation in full, upholding the hearing officer's decision.

### A. DCPS Did Not Violate Plaintiffs' Procedural Right to Observe.

#### 1. Plaintiffs Did Not Request Observation in July 2021.

First, in July 2021, Plaintiffs failed to communicate with DCPS about their intent to observe Deal and never triggered any obligation that DCPS had to provide them with an opportunity to observe. On July 21, 2021, Dr. Solomon emailed Deal and DCPS asking to "set up a time to meet by video and learn how Deal plans to implement [Z.J.]'s IEP." ECF 10-1 at 369. As Magistrate Judge Upadhyaya concluded, a request for a "time to meet by video" is not a

---

[6] While the regulation also specifies two other ways that procedural inadequacies can give rise to a claim, Plaintiffs have only raised arguments based on "significantly impeding" their involvement in the decision-making process. 34 C.F.R. § 300.513(a) (discussing procedural inadequacies that "[i]mpeded the child's right to a FAPE" or "[c]aused a deprivation of educational benefit"); ECF 19 at 3 (arguing that a procedural violation that violates "parental participation" in the decision-making process "stands alone").

request to "set up an observation." ECF 18 at 17. While "Dr. Solomon made it clear that she had questions about the proposed program," ECF 19 at 4, she did not indicate that she wanted those questions to be answered through observation. Under D.C. Code § 38-2571.03(5)(A), it is only "[u]pon request" that the school is required to "provide timely access" to the parents or their expert to observe a child's proposed special education program. Because such a request was not made in the plain text of Dr. Solomon's July 2021 email, the Court finds that DCPS did not deny Plaintiffs any procedural right to observe. Magistrate Judge Upadhyaya did not impose any magic words requirement by simply asking Plaintiffs to make their request clear.

Additionally, even if such a request were made, DCPS' response was appropriate. In reply, DCPS provided links to Deal's website and offered Plaintiffs the opportunity to schedule a school visit to tour the facility. ECF 10-1 at 368. Plaintiffs maintain that they refused DCPS' offer because it was only for "a generic tour . . . [that] would not have provided information specific to Z.J., his program, or how his IEP would be implemented" since "it was summer and school was not in session." ECF 19 at 4 (emphasis omitted). But as the hearing officer concluded in the factual findings below, while school was not in session in July, DCPS' offer also allowed for the possibility of scheduling a school visit "[o]nce the school year started," permitting Plaintiffs the opportunity to see a special education program and settings for lunch and recess in action. ECF 10-1 at 32. Plaintiffs fail to explain why they did not reply to DCPS' email or make any follow-up suggestions to pursue this course of action.

### 2. Plaintiffs Had No Right to Observe in October 2021.

Next, Plaintiffs contend that Magistrate Judge Upadhyaya erred in finding that DCPS did not violate their right to observe in October 2021. *See* ECF 19 at 4. On October 12, 2021, Dr. Solomon asked DCPS to "please send the schedule [Z.J.] would follow at Deal. We would like to

10

come observe the program." ECF 10-1 at 710. Two days later, a DCPS employee responded and told Dr. Solomon that DCPS "do[es] not make schedules for students who are not enrolled." *Id*. at 712–13. Here, the Court finds that D.C. Code § 38-2571.03(5)(A) only provides that parents can request to observe "a child's current or proposed special education program." At the time of the request, Z.J. was not currently enrolled in DCPS nor were his parents actively engaged in any IEP process proposing a special education program for him at Deal. In other words, in October 2021, Plaintiffs had no right to observe any special education program at Deal because there was no "current or proposed" program for Z.J. *See* ECF 18 at 3 (noting that Plaintiffs informed DCPS that Z.J. will attend Lab for the 2021–22 school year in August 2021, filed a due process complaint against DCPS, and did not agree to work with DCPS on an updated IEP for the 2022–23 school year until April 2022). The District's response, then, was not a denial of Plaintiffs' right to observe, but a recognition of the fact that no program had been proposed for Z.J.

### 3. Plaintiffs Also Had No Right to Observe in November 2022.

Lastly, the Court agrees with Magistrate Judge Upadhyaya that because Plaintiffs made the November 2022 request "three months after [they] filed a due process complaint," DCPS was no longer required to provide them with an opportunity to observe. ECF 18 at 18. The plain language of D.C. Code § 38-2571.03(5)(A) states that the right to observe does not extend to designees who are "representing the parent's child in litigation related to the provision of [a FAPE] for that child" or "who ha[ve] a financial interest in the outcome of such litigation." Another court in this district has found that this provision is triggered by a parent filing a due process complaint. *Smith*, 2023 WL 6291637, at *5 n.2 ("[N]o expert retained by [the parent] could have observed [the child] in the classroom after she filed her due process complaint."). Similarly, when ruling on Plaintiffs' motion to permit observation by Dr. Solomon, the hearing

11

officer found the due process proceedings to be a form of litigation that triggered an exception to the statutory right to observe. ECF 10-1 at 741–43 (refusing to allow Dr. Solomon to observe Deal in advance of an upcoming due process hearing because Dr. Solomon was listed as one of Plaintiffs' "anticipated witnesses"). This logic intuitively makes sense—DCPS is required to provide parents an opportunity to observe a proposed educational program when parents are working with the District to come up with a plan for their child. DCPS is not required to provide an opportunity to observe once the IEP development process has ended and dissatisfied parents seek additional information to strengthen a due process complaint or file litigation. Plaintiffs contest how Magistrate Judge Upadhyaya allegedly focused "on the timing of the observation requests" because there is no "time requirement" stated in D.C. law. ECF 19 at 5. But this misconstrues Magistrate Judge Upadhyaya's conclusion. The Report did not hold that Plaintiffs simply made their request too late based on some abstract timeline—it reasoned that Plaintiffs made their request at a time when they fell into an exception to the statutory right to observe. *See* D.C. Code § 38-2571.03(5)(A)(ii).

### B. Any Denial of Plaintiffs' Right to Observe Did Not Impact Their Substantive Rights in Any IEP Development Process.

Finally, the record indicates that Plaintiffs had extensive opportunities to participate in the IEP development processes and were not impeded from participating by any denial of observation. *See* 34 C.F.R. § 300.513(a)(2)(ii) (requiring that procedural inadequacies "[s]ignificantly impede[] the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child"). As the hearing officer found below, DCPS took extensive action to ensure that Plaintiffs and their expert had the opportunity to communicate with the IEP team at every stage of the development process. Plaintiffs themselves testified that they "fully participated" in the June 2021 IEP meeting. ECF 10-1 at 17 ¶ 32. They

"provided DCPS written feedback on the draft IEP" and "participated collaboratively in updating . . . [the] goals[] and objectives that reflected the progress that [Z.J.] made." *Id*. at 19 ¶ 41. In May 2022, Plaintiffs and Dr. Solomon also had the opportunity to "share[] their disagreement" with DCPS on the 2022 IEP and, following the meeting, DCPS "invited [them] to email their feedback or requests." *Id.* at 787.

The timing of the observation requests further demonstrates that Plaintiffs only made requests to observe after they had made up their minds about rejecting the IEPs, refuting their claims that the lack of observation negatively impacted their participation in the processes. The October 2021 request was made "two months *after* [they] rejected the 2021 IEP and informed DCPS that they were enrolling Z.J. at Lab" for the 2021–22 school year. ECF 18 at 18. And the November 2022 request came nearly four months after Plaintiffs informed DCPS that Z.J. would attend Lab for the 2022–23 school year. *Id*. at 4 (2022 IEP process concluded in May and Plaintiffs inform DCPS that Z.J. will attend Lab on July 18, 2022). The Court thus agrees with Magistrate Judge Upadhyaya that any procedural violation by DCPS could not have significantly impeded Plaintiffs' participation in the IEP processes because Plaintiffs were fully engaged in those processes and completed their participation prior to requesting observation.

Plaintiffs cite two cases in this district to argue that imposing "time requirement[s]" on when the observations must occur defeats the purpose of the Student Rights Act, which, in their view, aimed to "grant parents more rights in order to equal the playing field between school systems and parents." ECF 19 at 3, 5. Magistrate Judge Upadhyaya appropriately distinguished those cases from Plaintiffs' claims in two ways. ECF 18 at 18–19; *Middleton*, 312 F. Supp. 3d at 147–48; *Woodson v. District of Columbia*, No. 18-cv-1824, 2019 WL 3431154 (D.D.C. July 15, 2019), *report and recommendation adopted*, 2019 WL 3713524 (D.D.C. July 30, 2019). Both

13

*Woodson* and *Middleton* analyzed whether DCPS could impose agreements limiting how a parent's designee could use or share the information gathered from observing the child in a public school. *See Middleton*, 312 F. Supp. 3d at 147 (discussing DCPS' attempt to require "prospective observers to sign a 'Classroom Observer Confidentiality Agreement'"); *Woodson*, 2019 WL 3431154, at *7 (noting that the District asked a parent's expert to "sign a non-disclosure agreement" prior to observing the child). In contrast, Plaintiffs' claims only deal with the question of whether an observation was allowed to happen at all. ECF 18 at 19 (noting that DCPS did not seek to "impose any conditions in response to Dr. Solomon's observation requests"). Magistrate Judge Upadhyaya accordingly found that the provisions of D.C. law that "served as the basis for the court's rulings" in those cases were "inapplicable" to Plaintiffs' claims. *Id*. Second, both *Woodson* and *Middleton* addressed observation requests from parents that "occurred while the IEP teams were still developing the IEPs." *Id*. At that stage in the process, a procedural violation could impose substantive harm on their participation in the IEP development process. *See id.* In contrast, here, Dr. Solomon's requests occurred "*after* the IEP had already been developed, proposed, and rejected." *Id*. Accordingly, *Woodson* and *Middleton* do not support Plaintiffs' claims.

In short, Plaintiffs have failed to link the alleged denials of their observation requests to any substantive harm they suffered in their participation in the IEP development processes. *See Middleton*, 312 F. Supp. 3d at 128 (noting that a claim under the IDEA is only "actionable" if the "procedural violations affected the student's substantive rights"). Accordingly, the Court joins Magistrate Judge Upadhyaya and the hearing officer in rejecting Plaintiffs' claims under the IDEA and the Student Rights Act.

\*   \*   \*

The Court considered Plaintiffs' objection to the Report and Recommendation but agrees with Magistrate Judge Upadhyaya's conclusions that DCPS did not violate Plaintiffs' procedural or substantive rights. Plaintiffs have not demonstrated that they had or triggered a right to observe under D.C. law or that any supposed denial of their requests significantly impaired their participation in Z.J.'s IEP development processes. The factual summary from Magistrate Judge Upadhyaya's Report and Recommendation is adopted in full. With no other objections from Plaintiffs, the Court also adopts Magistrate Judge Upadhyaya's conclusions upholding the hearing officer's decision. Accordingly, Plaintiffs' Motion for Summary Judgment, ECF 11, is **DENIED**. The District's Cross Motion for Summary Judgment, ECF 13, is **GRANTED**. A separate order will accompany this opinion.

**SO ORDERED.**

                                                                  _____
                                                                  JIA M. COBB
                                                                  United States District Judge

Date: February 27, 2026